*In re* RICHARD EUGENE ELKOW (The People of the State of Illinois, Petitioner-Appellee, v. Richard Eugene Elkow, Respondent-Appellant).

Fourth District No. 4—87—0421

Opinion filed March 24, 1988.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Carbondale, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Respondent, Richard Elkow, challenges the judgment of the circuit court of Vermilion County finding him to be a person subject to involuntary admission pursuant to article VI, chapter 3 of the Mental

Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1985, ch. 91½, pars. 3—600 through 3—611). He raises several issues on appeal, contending the petition was untimely filed, the petition was untimely served upon him, counsel was not appointed in accordance with the statutory requirements, notice of hearing was defective, and he was denied the effective assistance of counsel.

Phyllis Cline, a social worker at the Veterans Administration Medical Center (medical center) in Danville, filed a petition in circuit court May 27, 1987, asserting respondent was mentally ill and could reasonably be expected to inflict serious physical harm upon himself or another in the near future. She asserted respondent was unable to provide for his basic physical needs so as to guard himself from serious harm, and he was in need of immediate admission for the prevention of such harm. Cline based her assertions on a report respondent started a fire in his kitchen May 25 which threatened the lives of other building residents. Officials reportedly broke down the apartment door, which was barricaded, after respondent refused to let anyone enter. The fire department extinguished the blaze. Cline's report stated respondent was found incoherent and delusional. He resisted attempts to remove him from the apartment. The petition described the squalid conditions in which respondent was found.

The petition, form document No. 79—MHDD—5, was entitled "Petition for Involuntary/Judicial Admission." Above the title, at the left margin were listed the following sections of the Code: "Ref.: Sections 3—403, 3—601, 3—603, 3—607, 3—701, 3—813, 4—306, 4—401, 4—403, 4—405, 4—501, 4—611." The section of the Code under which Cline sought respondent's commitment did not appear in the petition.

The petition also contained a printed paragraph, signed by Cline, stating she had explained to respondent the rights of admittee and rights of recipients forms and she had given him copies of each form. Below that paragraph is a handwritten statement signed by Cline:

"[A]ttempt made to give patient copies of his rights but he refused to accept them or listen to explanation and turned his back, told me to leave. He asked that copies be given to the nurse sitting next to him and this was done."

Filed along with the petition on May 27, 1987, were certificates prepared by medical center staff psychiatrists Dr. Lisa Barcenilla, who examined respondent May 26 at 3 p.m., and Dr. Choon Yu, who examined respondent May 27 at 8 a.m. The doctors stated respondent was mentally ill, and as a result, he was reasonably expected to inflict serious physical harm on himself in the near future. Dr. Barcenilla's report reflected that at the time of the examination, respondent had

just been treated at the surgical clinic for "infection and probable burns." A social history and treatment plan were also filed May 27.

Notice of hearing dated May 28, 1987, showed a hearing scheduled for May 29. The notice was served upon respondent and Cline May 28. A second notice, scheduling a hearing for June 2, 1987, was filed with the circuit clerk and served on respondent and Cline June 1, 1987. The record does not reflect the reason for rescheduling.

At the outset of the June 2 hearing, respondent asked who his attorney was and stated he had a right to an attorney. After the judge asked him if he had an attorney, respondent stated he was qualified and would represent himself. The judge appointed Gaye Garner, an assistant public defender, to represent respondent. The court gave respondent an opportunity to confer with counsel. Once the hearing resumed, the court tendered a copy of the petition to respondent at Garner's request.

Phyllis Cline testified respondent was admitted May 26 "around the midnight hour." She stated the fire department received a report of smoke from respondent's apartment, and removed respondent from the apartment "with some difficulty" after extinguishing the fire. Respondent was then brought to the medical center. Cline testified she spoke with respondent in ward 7, a locked psychiatric ward, sometime during her 7:45 to 4:15 shift on May 26. Cline stated she received incoherent answers from respondent to questions about how he had come to be admitted to the hospital. When asked how his leg was injured, he denied it was injured or that it had been burned in a fire. He later indicated he had started the fire. Cline decided to talk to him the next day to see if he was any more coherent. She stated fire department personnel telephoned her May 26 and brought photographs of respondent's apartment to the medical center the following day. On May 27, 1987, Cline attempted to serve respondent "his rights." He refused to accept them, turned his back, and told Cline to give them to a nurse sitting nearby. She did. Cline stated respondent had been a patient at the medical center August 18 to October 10, 1986, and had been released as uncooperative.

Dr. Barcenilla testified respondent was admitted around midnight on the 26th of May. The testimony is somewhat confused as to whether the doctor saw respondent on the 26th or 27th. She said she spoke to him on the 27th in the locked ward and prepared the certificate the first day she saw him. However, her report was dated May 26 and stated respondent was examined May 26 at 3 p.m. Dr. Barcenilla stated she found respondent uncooperative and diagnosed him as a paranoid schizophrenic. She testified respondent repeatedly

refused to take prescribed medication. The doctor stated respondent's behavior in the locked ward was uncontrollable. She stated he could not survive as an outpatient because he was poor and unable to care for himself. She recommended commitment to the medical center, where he could be treated.

Garner, respondent's court-appointed counsel, cross-examined Dr. Barcenilla. The substance of that examination concerned the proposed treatment plan and respondent's current medication. Following the cross-examination, the judge asked respondent if he had any questions. Respondent requested a continuance to arrange for other witnesses listed on the petition to testify on his behalf. The court denied the motion. Garner then requested the record reflect respondent refused to speak to her after she told him she was his court-appointed attorney. Garner told the court respondent indicated to her he wanted to represent himself and would not discuss any of the facts of the case with her.

The court concluded respondent was a person subject to involuntary admission, respondent suffered from schizophrenia, and he was reasonably expected to cause injury to himself or others. The judge found the least restrictive alternative to be a 60-day commitment at the medical center. A written order was entered June 3, 1987. Notice of appeal was filed June 18, 1987.

Respondent bases his position on the provisions of article VI of chapter 3 of the Code (Ill. Rev. Stat. 1985, ch. 91½, pars. 3—600 through 3—611) relating to emergency admission by certification. However, nothing in the record shows respondent was admitted pursuant to article VI. The petition does not state who brought respondent to the hospital or how he came to be admitted. At oral argument, the parties were hard-pressed to state unequivocally this matter fell within article VI. The form petition used by Cline lists 12 sections of the Code under which such a petition may be filed. These sections come from various parts of the Code.

For example, section 3—403 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—403) governs discharge of voluntarily admitted adults. Section 3—601 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—601) relates to involuntary admittees requiring immediate hospitalization. Section 3—603 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—603) provides for temporary detention in certain emergency admission cases until a physician's certificate can be obtained. Section 3—607 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—607) gives the court authority in certain circumstances to order detention and examination and authorizes the filing of a petition for emergency admission within 24 hours. Section 3—611 (Ill. Rev.

Stat. 1985, ch. 91½, par. 3—611) sets forth filing procedures in emergency admission cases. Nonemergency involuntary commitment procedures are governed by section 3—701 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—701). Additional periods of treatment for mentally ill persons may be obtained by following the procedure set forth in section 3—813 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—813). Section 4—306 (Ill. Rev. Stat. 1985, ch. 91½, par. 4—306) contains discharge procedures applicable to developmentally disabled persons who have been administratively admitted. Sections 4—401, 4—403, 4—405, and 4—501 (Ill. Rev. Stat. 1985, ch. 91½, pars. 4—401, 4—403, 4—405, 4—501) relate to emergency and judicial admissions of mentally retarded persons. Additional periods of admission for developmentally disabled persons may be sought by filing a petition pursuant to section 4—611 (Ill. Rev. Stat. 1985, ch. 91½, par. 4—611).

We note different sections of the Code contain different filing requirements for the various types of admissions. For example, sections 3—611 (emergency admission by certification) and 4—407 (emergency admission of the mentally retarded) require the petition to be filed within 24 hours after respondent's admission. In contrast, section 3—701 of article VII (governing involuntary judicial admissions) places no time limitation on filing the petition, though the contents of the petition must conform to the requirements of section 3—601(b) (Ill. Rev. Stat. 1985, ch. 91½, par. 3—601(b)). Article VII also affords a respondent certain protections not available to a person admitted under article VI. (See, e.g., Ill. Rev. Stat. 1985, ch. 91½, par. 3—704 ("respondent shall be permitted to remain in his place of residence pending any examination").) Substantial prejudice can result if petitioner fails to specify which type of admission is being sought.

Without more specific information on the form petition, it is impossible for the court to tell which section of the Code is the basis for the petition. Our function is not to guess which section of the Code petitioner intends to invoke, or to divine the answer through extrapolation of facts in the record. Illinois courts have previously ruled meticulous practice dictates motions to dismiss designate whether they are brought under section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110½, pars. 2—615, 2—619). (Galayda v. Penman (1980), 80 Ill. App. 3d 423, 399 N.E.2d 656; Eddings v. Dundee Township Highway Commissioner (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888.) Such failure may constitute grounds for reversal if the nonmovant is prejudiced. Premier Electrical Construction Co. v. La Salle National Bank (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360.

■ Therefore, in cases brought under the Code, we hold no petition may be filed and no hearing may be held unless the section of the Code on which the proceeding is based is clearly stated in the petition. Failure to do so will subject the petition to dismissal with reasonable leave to amend. With respect to this case, the fire, the fact respondent barricaded himself in the apartment, the admission in the middle of the night, and respondent's prior history suggest an emergency admission under article VI.

■ We first address respondent's contention the petition was not filed within 24 hours of respondent's admission. He argues he was admitted at the latest on May 25, making the May 27 filing untimely. The State asserts respondent was admitted on May 26 and the filing on May 27 complied with the statutory requirement.

Section 3—601(a) of the Code specifies:

"(a) When a person is asserted to be subject to involuntary admission and in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm, any person 18 years of age or older may present a petition to the facility director of a mental health facility in the county where the respondent resides or is present. The petition may be prepared by the facility director of the facility." Ill. Rev. Stat. 1985, ch. 91½, par. 3—601(a).

Filing requirements are set forth by section 3—611:

"Within 24 hours, excluding Saturdays, Sundays and holidays, after the respondent's admission under this Article, the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court. The facility director shall make copies of the certificates available to the attorneys for the parties upon request. Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after receipt of the petition. The court shall direct that notice of the time and place of the hearing be served upon the respondent, his responsible relatives, and the persons entitled to receive a copy of the petition pursuant to Section 3—609." Ill. Rev. Stat. 1985, ch. 91½, par. 3—611.

A preliminary question concerns the date and time respondent was admitted. The petition states no time of admission. Cline's testi-

mony indicates respondent was admitted on the 25th or 26th around midnight. The treatment plan submitted with the petition shows an admission date of May 26, 1987. Monday, May 25, 1987, was a legal holiday for the observance of Memorial Day. Section 3—611 excludes holidays from the 24 hours in which the petition must be filed with the court. Therefore, for purposes of determining statutory compliance, we find the admission occurred at midnight, May 26, 1987.

Section 3—611 allows 24 hours from the time of admission to file the petitions, one of two required certificates, and a proof of service of the petition and statement of rights. Here, a petition, both certificates, a dispositional report and a treatment plan were filed May 27, 1987. No separate proof of service of the petition appears in the record, though the proof of service of statement of rights is contained in the petition itself.

In mental health cases, the need for strict compliance with the relevant statutory provisions is compelling, as liberty interests are involved. (*In re Satterlee* (1986), 148 Ill. App. 3d 84, 499 N.E.2d 101.) Any noncompliance with statutory, prescribed involuntary commitment procedures renders the judgment entered in such a cause erroneous and of no effect. *In re Whittenberg* (1986), 143 Ill. App. 3d 836, 493 N.E.2d 662; *In re Price* (1987), 152 Ill. App. 3d 960, 505 N.E.2d 37.

In order to comply with the 24-hour requirement, the petition would have to have been filed by midnight, May 27. Even if the petition and supporting documents had been filed at 9 a.m. on May 27, more than 24 hours would have elapsed from midnight, May 26, when respondent was admitted. Section 3—611 allows filing of the petition and proofs of service with only one certificate, provided the second certificate is promptly filed when completed. Since Dr. Barcenilla's certificate was prepared May 26, it, along with the petition and other documents, could have been filed on that date. Dr. Yu's certificate could have been filed promptly after its issuance on May 27 without running afoul of the 24-hour requirement. However, this was not done. We conclude the petition was untimely filed.

Although our decision on this issue is dispositive, we consider respondent's further argument he was not served with a copy of the petition as required by section 3—609, which states in pertinent part:

"Within 12 hours after his admission, the respondent shall be given a copy of the petition and a statement as provided in Section 3—206. Not later than 24 hours, excluding Saturdays, Sundays and holidays, after admission, a copy of the petition and statement shall be given or sent to the respondent's attorney

and guardian, if any." Ill. Rev. Stat. 1985, ch. 91½, par. 3—609.

There is no evidence in the record indicating a copy of the petition was given to respondent within 12 hours of admission. Cline testified, and the petition stated, an attempt was made on May 27 to give respondent copies of his rights forms. No such proof exists showing service of the petition itself. Section 3—609 was not complied with. Even assuming the petition was served at the time the rights forms were given to respondent on May 27, more than 12 hours had elapsed from the time of respondent's admission at midnight, May 26.

■■ Respondent also claims the court failed to comply with section 3—805 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—805) by failing to appoint counsel at the time the matter was set for hearing. The State contends the statute allows counsel to be appointed at the hearing.

Section 3—805 states in pertinent part:

> "Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." Ill. Rev. Stat. 1985, ch. 91½, par. 3—805.

The relevant portion of the previous mental health law, the Mental Health Code of 1967, stated:

> "At any hearing under this Act, the court shall inform the person asserted to be mentally retarded or to be in need of mental treatment of his right to counsel and ask if he desires counsel of his choice to be summoned or counsel to be appointed by the court, and the court shall require that such person's request for counsel be complied with and that in all events each person is represented by counsel." Ill. Rev. Stat. 1977, ch. 91½, par. 9—4.

The cardinal rule of statutory construction is to give effect to the legislature's intent. (*Interlake, Inc. v. Industrial Comm'n* (1983), 95 Ill. 2d 181, 447 N.E.2d 339.) Respondent cites in support of his position proposed section 3—806 of the 1976 report of the Governor's Commission for Revision of the Mental Health Code of Illinois. (Report, Governor's Commission for the Revision of the Mental Health Code of Illinois, at 60-61 (1976) (hereinafter referred to as Governor's

Report).) This report proposed changes in the Mental Health Code of 1967. The relevant portion of proposed section 3—806 is identical to the portion of current section 3—805 quoted above. The comment to the section states in pertinent part:

"This section does not substantively change section 9—4 of the current Code, which requires 'that in all events each person is represented by counsel.' *It seeks to make this right to counsel more effective by requiring the appointment to be made when the time of hearing is set. Under present practice, the court usually appoints the public defender on the day of the hearing, making preparation for an adequate defense virtually impossible.* Andalman & Chambers at 90 recommend that the court inform the attorney 'of each person facing involuntary civil commitment proceedings on the same day that the court receives the petition for commitment or notice of the patient's involuntary admission.' " (Emphasis added.) Governor's Report, comment to §3-806, at 61 (1976).

While none of the extensive House and Senate debates address this provision, proposed section 3—806 was adopted without change as the current section 3—805 of the Code. This suggests the legislature intended counsel to be appointed at the time the hearing was set, which was not done here.

The procedure under section 3—805 is analogous to that used when a petition for adjudication of disability is filed pursuant to section 11a—8 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—8). In those cases, once a petition has been filed, the court is required to set a date and place for hearing and to appoint a guardian *ad litem* to represent the respondent. (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—10(a).) The court may later appoint counsel for respondent if such an appointment is in respondent's best interests (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—10(b)(1)), or if respondent so requests or takes a position adverse to that of the guardian *ad litem* (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—10(b)(2)).

Here, appointing counsel at the time the hearing is set serves several purposes. The client is afforded a chance to confer with the lawyer or to state he wants a private attorney. It gives the attorney an opportunity to discuss the matter with the client. Even if a respondent asks to appear *pro se,* section 3—805 requires the request to be made after consultation with counsel. In addition, the hearing itself is protected. Section 3—611 directs the hearing to be held within five days after admission. Section 3—805 states a hearing shall not proceed unless a respondent is either represented by counsel or asks to

represent himself and satisfies the court that he has the capacity to make an informed waiver. If the court determines the respondent does not possess the capacity to waive the right to counsel, respondent still has the benefit of the appointed attorney's services and the hearing can proceed. One problem encountered in delaying appointment of counsel is lack of preparation, which may give rise to a claim of ineffective assistance of counsel, an issue we need not reach here.

As our ruling on the foregoing disposes of the matter, we need not address respondent's other contentions. We reverse the judgment of the circuit court of Vermilion County.

Reversed.

McCULLOUGH and SPITZ, JJ., concur.