*In re* LYLE HILTON, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Lyle Hilton, Respondent-Appellant).

Third District    No. 3—89—0043

Opinion filed August 24, 1989.—Rehearing denied November 7, 1989.

Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Nancy Rink Carter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Respondent Lyle Hilton appeals from an order of the circuit court of Peoria County for his continued involuntary hospitalization in the Department of Mental Health and Developmental Disabilities (DMHDD) for 180 days. Respondent cites several procedural deficiencies in the petition for admission and supporting certificates, and contends that he was deprived of his right to counsel, that the trial court failed to consider treatment alternatives, and that the evidence admitted at his hearing failed to support an involuntary admission. We affirm.

■ Procedurally, respondent first complains that the petition for admission filed on December 28, 1988, was untimely. Respondent relies upon section 3—813(a) of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(a)), which restricts periods of initial involuntary admissions and the first subsequent extension of involuntary hospitalization to 60 days. If the second petition is not filed before the expiration of the first 60-day period, the patient must be discharged. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(a).) Under subparagraph (b) of that section, the statute provides that "[a]dditional 180-day periods of treatment may be sought pursuant to the procedures set out in [subsection (a)] for so long as the patient continues to be subject to involuntary admission." (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(b).) In support of his argument that subparagraph (a) applies, rather than subparagraph (b), respondent suggests that he was initially hospitalized by an order of the Peoria County circuit court dated October 26, 1988.

In fact, the record on appeal establishes that respondent has been continuously hospitalized on an involuntary basis since at least May 6, 1987. According to testimony admitted at respondent's hearing on the petition here at issue, respondent has been hospitalized continuously since 1977 or 1978. Prior to his transfer to Zeller Mental Health Center in Peoria on March 23, 1988, respondent was a patient at Chester Mental Health Center in Randolph County. The record contains copies of orders for hospitalization entered by the circuit court of Randolph County on May 6 and July 22, 1987, and March 14, 1988.

On September 14, 1988, 183 days after the last Randolph County order, a petition was filed in the circuit court of Peoria County seeking an additional period of treatment. After a hearing, the court's order for further hospitalization was entered on October 26, 1988, without specifying the period of treatment. Respondent did not appeal from this order. Then, on December 28, another petition for involuntary admission was filed with the circuit court of Peoria County, and

the matter was set for a January 4, 1989, hearing.

Respondent invites us to speculate that, lacking any documentary evidence that he was not discharged or converted to voluntary status at some point between March 14 and September 14, 1988, the October 26 admission must be considered an initial admission for 60 days. Since the December 28 petition was filed 64 days after the October 26 admission, the argument continues, it was untimely and respondent is entitled to a discharge. See *In re Smith* (1986), 145 Ill. App. 3d 1002, 496 N.E.2d 497 (wherein court on review determined that petition for continuing hospitalization filed a week after period of initial involuntary hospitalization expired was untimely, rendering trial court's order on second petition invalid).

The record before us contains no transcript of the October 26 hearing. At his hearing on January 4, 1989, respondent was represented by counsel and no objection was raised as to the timeliness of the December 28 petition. In the absence of any evidence that the period of treatment ordered on October 26 was for less than 64 days, we will not assume that the December 28 petition was untimely. Moreover, the testimony admitted at respondent's hearing of January 4 belies respondent's current position. Both respondent himself and his treating physician testified that respondent has been institutionalized continuously pursuant to court order. This testimony, coupled with the documentary evidence of record, supports the petitioner's position that both the September 14 petition and the one on December 28 were brought pursuant to section 3—813(b) of the Code for continued treatment periods up to 180 days.

Any untimeliness of the September 14 petition has been waived by failure to appeal from the court's October 26 order extending respondent's hospitalization under section 3—813(b). We will not retroactively rectify the petitioner's failure to discharge respondent upon expiration of the 180-day period in September 1988 by viewing the September 14 petition as an initial commitment period when it is clear that it was not in fact. (See *In re Vancil* (1989), 183 Ill. App. 3d 204, 538 N.E.2d 1372 (an action treated by the circuit court as one for continuation of hospitalization cannot be validated as one brought under section 3—701(a) as an initial involuntary admission merely because the patient was not released after 60 days as required under section 3—813(a) of the Code).) At worst, it would appear that the court-ordered periods of continued treatment overlapped; but where, as in this case, further judicial review is indicated, such overlapping does not invalidate the later petition.

■ Respondent's second procedural attack relates to Dr. Aranas'

certificate in support of the December 28 petition. Section 3—703 of the Code requires that a petition for involuntary admission be supported by a psychiatric certification examination in addition to certification by a qualified examiner. The Code defines a psychiatrist as "a physician *** who has at least 3 years of formal training or primary experience in the diagnosis and treatment of mental illness." Ill. Rev. Stat. 1987, ch. 91½, par. 1—121.

Dr. Maria Aranas showed her title as "physician" on the face of the certificate in question. A second certificate accompanying the petition was signed by Chris LaRue, a clinical social worker—by definition, a qualified examiner for purposes of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 1—122). Pursuant to section 3—702(b) of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—702(b)), the hearing was set for January 4. At the hearing, Dr. Aranas took the witness stand in support of the petition. Counsel for respondent immediately stipulated to Aranas' qualifications, and the record is otherwise silent on this point.

In *In re Stone* (1989), 178 Ill. App. 3d 1084, 534 N.E.2d 213, we reversed judgment ordering the involuntary admission of respondent Stone for failure to file a psychiatrist's certificate in addition to that of a qualified examiner. Dr. Aranas was the certifying physician in *Stone* as well. However, to the extent that the opinion in *Stone* does not disclose whether Dr. Aranas testified in Stone's hearing or whether counsel for Stone stipulated to her qualifications, we do not believe that the facts before us today compel the same disposition on review.

Rather, we find guidance in *In re Hightshoe* (1987), 155 Ill. App. 3d 371, 508 N.E.2d 488. In *Hightshoe,* respondent challenged the certification accompanying a petition for involuntary admission on the ground that the physician who examined him did so in Indiana and the certificate did not affirmatively state that the physician was qualified to practice in Illinois. Respondent contended that inasmuch as "physician" is defined in the Code as a person licensed in this State to practice medicine (Ill. Rev. Stat. 1987, ch. 91½, par. 1—120), the Indiana certification did not satisfy the requirements of section 3—703. On review, the *Hightshoe* court rejected respondent's position, stating:

> "Here, the only indication that the statutory requirements were not complied with is the location of the first examination. It is necessary to speculate that the physician was not qualified. We find that the issue was not raised in a timely fashion below, and any error is not readily apparent from the record. *In re Peterson* (1983), 113 Ill. App. 3d 77, 446 N.E.2d 565." *Hight-*

*shoe*, 155 Ill. App. 3d at 373, 508 N.E.2d at 489.

As in *Hightshoe*, in this case the only indication that the statutory requirements were not complied with is Dr. Aranas' failure to demonstrate that her practice as a physician qualifies her as a "psychiatrist" for purposes of the Code. Given respondent's general stipulation to her qualifications and the lack of any evidence that Dr. Aranas does not in fact meet the statutory qualifications for a psychiatrist, we will not speculate that the circuit court committed error in proceeding with a hearing on the December 28 petition pursuant to section 3—702(b).

■ Respondent similarly contends that he is entitled to discharge because the record does not affirmatively demonstrate that counsel was appointed to represent him on December 28, when the hearing date was set. In *In re Walters* (1989), 183 Ill. App. 3d 452, 455, 539 N.E.2d 454, 456, we reversed an order for involuntary admission for failure to appoint counsel prior to respondent's hearing because the record there "affirmatively establishe[d] that [respondent] desired to confer with counsel, but was denied that opportunity."

By contrast, the report of proceedings in this case demonstrates that attorney John Riddle was appointed to represent respondent at some point prior to the start of the January 4 hearing. Although the common law record does not indicate that the appointment was concurrent with the setting of the hearing on the petition as contemplated by section 3—805 of the Code (*In re Elkow* (1988), 167 Ill. App. 3d 187, 521 N.E.2d 290), neither does it demonstrate that respondent was denied a meaningful opportunity to confer with counsel or that appointed counsel was not prepared to represent respondent competently. Under these circumstances, as aforesaid, we will not speculate that the circuit court erred.

■ Next, respondent argues that treatment alternatives were not considered by the circuit court in extending his admission to the Zeller Zone Mental Center. Respondent also argues that the record does not support the court's finding that respondent qualified as a "person subject to involuntary admission" in that he was reasonably expected to seriously harm someone or dangerously unable to care for his own basic physical needs. (Ill. Rev. Stat. 1987, ch. 91½, par. 1—119.) Based on our review of the record on appeal, we find that the evidence supports the circuit court's findings both that respondent is subject to involuntary admission and that continued hospitalization in the DMHDD is the least restrictive placement appropriate.

Respondent suffers from a long-term mental illness known as bipolar disorder. He has grandiose delusions. The record is replete with

evidence of respondent's proclivity to violence when he is not appropriately medicated or when he drinks alcohol. Respondent does not believe that he is mentally ill or that he needs medication. He has threatened to kill the staff at Zeller. Respondent told Dr. Aranas that he had killed a policeman. He testified that he had killed people during the Korean war. Respondent's hostility is controlled under medication, but he has at times refused to take it. Respondent believes in his fantasies. He further believes that violence is an effective response to interpersonal relations. Respondent is an alcoholic and loses control of his impulses when he drinks. Respondent stated that if discharged he did not intend to stop drinking, but would "have a few at home" instead of "going to the tavern to raise hell." Respondent had shown no improvement in his condition while at Zeller prior to the January 4, 1989, hearing.

It is clear from the testimony admitted at respondent's hearing that respondent is mentally ill and that he poses a serious and substantial risk to the health and lives of himself and others. The record on appeal demonstrates that the circuit court heard testimony that respondent wanted to leave the State institution, that he was a veteran and that he had family, but preferred to move in with his girlfriend in Peoria. In ordering continued hospitalization in the DMHDD, the court rejected alternative placement with the Veteran's Administration or other private facilities. Under these circumstances, we find nothing to commend an environment less restrictive than the Department of Mental Health and Developmental Disabilities. Accordingly, we find no error in the circuit court's order for continued hospitalization.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.