*In re* DAVID LA TOUCHE, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. David La Touche, Respondent-Appellant).

Second District   No. 2—92—0282

Opinion filed July 29, 1993.

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

David La Touche, respondent, appeals after the trial court ordered that he is a person subject to involuntary admission and that he be hospitalized with the Department of Mental Health. He appeals contending that (1) the trial court erred in ordering involuntary admission because the petition was not filed in accordance with section 3—611 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/3—611 (West 1992)); (2) the State's failure to follow the provisions of the Code deprived the trial court of jurisdiction, thereby rendering the court's order void; and (3) the finding that respondent was reasonably expected to inflict serious physical harm upon himself or another in the near future was not clear and convincing. Because we find the first contention to be determinative, we reverse.

On February 7, 1992, the petition for involuntary admission of respondent was completed. Robert S. Riley, the signer of the petition and respondent's former counselor, asserted that respondent was a person who is mentally ill and reasonably expected to seriously harm himself or others in the near future. He based this assertion on the following information:

"Increasing paranoia, last 2 months. Late December, loudly accused leader of Rockford Alano club of sex and violence against women, dismembering them, etc. Pulled a pen knife—but not any assault. Tonight, fearful that people were coming to get him in Chadwick, he stopped several motorists by stopping his car in the road or standing in the street, approaching them with a flashlight and club to demand identification. One motorist had to swerve to avoid him."

Respondent was admitted into the Singer Mental Health Center on Saturday, February 8, 1992, and was given a copy of the petition

and his statement of rights in accordance with section 3—609 of the Code. (405 ILCS 5/3—609 (West 1992).) The petition was filed in the circuit court of Winnebago County on Tuesday, February 11, 1992, apparently along with the section 3—602 examiner's certificate. The second required examiner's certificate was filed on February 13, 1992.

At the hearing on February 19, two people whom respondent stopped on the evening of February 7, 1992, testified that they were approached by respondent, but were not harmed by him. Officer Michael Morgan of the Chadwick police department testified that he responded to "a problem over at the school" and found respondent in his car. Respondent told Officer Morgan that someone had punctured holes in the radiator of his other car, which was parked at his home, and that he wanted to settle the problem. Officer Morgan accompanied respondent home and found the car radiator was damp but had no puncture holes. Officer Morgan previously had responded to reported thefts at respondent's home, and respondent had told him that demonic spirits may have been in the house.

Warren Lewis, a psychiatrist, testified that respondent had delusions of persecution and suffered from schizophrenia. He opined that respondent could reasonably be expected to harm himself or others in the near future.

After the arguments of counsel, the trial judge found that respondent was mentally ill and likely to harm others in the near future. He ordered that respondent remain involuntarily hospitalized at the Singer Mental Health Center. Thereafter, respondent filed a timely appeal.

Respondent first contends that the trial court's order should be reversed because the petition for involuntary admission was not filed within 24 hours after his admission, excluding Saturdays, Sundays and holidays, as required under section 3—611 of the Code. (405 ILCS 5/3—611 (West 1992).) He claims that because he was admitted on a Saturday, the State had from 12:01 a.m. on Monday, February 10, 1992, until midnight to file the petition in the circuit court. The petition was filed sometime during business hours on Tuesday, February 11. Respondent also claims that he did not waive this argument by raising it after the hearing. He argues that under plain error analysis the trial court's commitment order should be reversed.

The State contends that the petition was filed within the proper time period. Because respondent was admitted on a Saturday, the State claims that the 24-hour period ran from the opening of "regular business hours" on Monday, February 10, until the opening of "regular business hours" on Tuesday, February 11, the time at which the

State implies the petition was filed. The State also claims that respondent has waived the issue and that, pursuant to supreme court precedent, its failure to comply strictly with the Code does not require reversal.

Involuntary commitment proceedings invade a patient's liberty interests; thus, the statutory sections of the Code should be construed strictly in favor of the patient. (*In re Houlihan* (1992), 231 Ill. App. 3d 677, 681.) "Inherent in the civil commitment proceeding are the distinct interests of providing patients with necessary treatment as well as protecting society from dangerous conduct." (*In re Williams* (1987), 151 Ill. App. 3d 911, 919.) Errors demonstrating noncompliance with the statutory provisions that appear on the face of the record may render a judgment erroneous even if not raised at trial. *In re Clark* (1991), 220 Ill. App. 3d 1024, 1027-28.

■ We reject the State's claim that respondent has waived the issue whether the petition was filed within the time frame allowed under section 3—611 of the Code. The State relies on *In re Nau* (1992), 153 Ill. 2d 406, to support its waiver argument. However, we find *Nau* distinguishable on its facts. There, the respondent argued that he was not served with notice of his commitment hearing at the direction of the trial court, as required under section 3—611 of the Code. (*Nau*, 153 Ill. 2d at 416.) The respondent argued that he received notice of the hearing before the petition was filed and, technically, before the trial court could set a hearing date. (*Nau*, 153 Ill. 2d at 416.) The supreme court held that the respondent waived the notice issue because the respondent's counsel stated to the trial court at the start of the hearing that the court file indicated that service was proper. *Nau*, 153 Ill. 2d at 419. See also *In re Splett* (1991), 143 Ill. 2d 225, 232.

Here, neither respondent nor his counsel has indicated previously that the petition was filed in a timely manner. In accordance with *Clark*, the State's alleged failure to file timely the petition for involuntary admission is an error that appears on the face of the record and is not waived for failure to raise it at trial. (*Clark*, 220 Ill. App. 3d at 1027-28.) An error readily apparent on the face of the record may be considered under a doctrine analogous to plain error. (*In re Whittenberg* (1986), 143 Ill. App. 3d 836, 837-38.) We find no waiver by respondent.

■ We further reject the State's contention that the petition was filed in a timely manner. Our reading of section 3—611 of the Code leads us to conclude that the 24-hour period in which to file the petition never allows more than one business day in which to comply. For example, if a respondent is involuntarily admitted at 6 p.m. on a Fri-

day, under the plain meaning of the statute, the petition must be filed by 6 p.m. on Monday. Since regular business hours have already ended at 6 p.m. on a Friday, the petitioner will have one period of regular business hours to file. Even if a respondent is involuntarily admitted in the middle of a particular business day, the petitioner only will have the remainder of that business day and the first portion of the next business day to file. Under any possible scenario in which a respondent is involuntarily admitted on a regular business day, the petitioner is given only one full period of regular business hours to file.

The State attempts to earn more than one period of regular business hours to file the petition if the respondent is admitted on a Saturday, Sunday or holiday. However, in accordance with the plain meaning of section 3—611 of the Code, if a respondent is admitted on a Saturday, Sunday or holiday, the 24-hour period in which the petition must be filed begins at 12 a.m. of the next day that is not a Saturday, Sunday or holiday. The time period then expires on 12 a.m. of the following day. See *In re Elkow* (1988), 167 Ill. App. 3d 187, 193.

Here, respondent was involuntarily admitted on Saturday, February 8, 1992. Under the plain meaning of section 3—611, the 24-hour period began at 12 a.m. on Monday, February 10, 1992. The State had until 12 a.m. on Tuesday, February 11, 1992, in which to file the petition. Because the State filed the petition after the 24-hour period required by section 3—611 of the Code, the trial court's order of involuntary admission should be reversed.

The State argues that the error in filing was harmless and should not result in a reversal. Again, the State relies on *Nau* (153 Ill. 2d 406), where the supreme court held that the respondent was not prejudiced when the State filed a petition for continued hospitalization under section 3—813 of the Code one day late. (*Nau*, 153 Ill. 2d at 423.) The supreme court noted that if the respondent had objected timely to the late filing and not waived the issue, the State simply would have withdrawn its section 3—813 petition for continued hospitalization and filed a section 3—601 petition for initial commitment. (*Nau*, 153 Ill. 2d at 421.) In concluding that the respondent waived the issue of the timeliness of the petition, the supreme court clarified that it was "not a case in which an involuntarily committed patient was neglected by the system." *Nau*, 153 Ill. 2d at 423.

The *Nau* court, relying on *People v. Lang* (1989), 189 Ill. App. 3d 384, 388, treated the section 3—813 petitions for continued hospitalization as *de facto* initial petitions for involuntary commitment under section 3—601 of the Code. In both cases, the 24-hour filing provision under section 3—611 was implicitly satisfied as both petitions were

filed one day after the initial period of hospitalization. (*Nau*, 153 Ill. 2d at 420; *Lang*, 189 Ill. App. 3d at 388.) Neither case stands for the proposition that filing an initial petition after the required 24-hour period in section 3—611 is harmless error.

We find a paragraph from *People v. Valentine* (1990), 201 Ill. App. 3d 10, particularly persuasive on the importance of following the statutory procedures of the Code. Although its discussion focuses on the 24-hour period from the time the patient is committed in which a psychiatric examination must be performed, it is equally applicable to the 24-hour period in which to file the petition:

> "The legislature has created a bright line. The State has 24 hours. No doubt, the bright line was created as a prophylactic against deciding these kinds of cases on an *ad hoc* basis. When we recall that other governments have used involuntary commitment to a mental hospital as a ruse, as a device to silence critics, we feel that this bright line is but one brick in a wall against the evils of tyranny that we, in this country, have erected. One brief glance toward the recent history of Eastern Europe is persuasive of the wisdom of that wall, the wisdom of this rule." *Valentine*, 201 Ill. App. 3d at 13.

We hold that the State failed to meet the statutory requirements of section 3—611 of the Code, for failure to file the petition within 24 hours of respondent's admission. (See *In re Johnson* (1989), 191 Ill. App. 3d 93, 95; *In re Riviere* (1989), 183 Ill. App. 3d 456, 459; *In re Elkow* (1988), 167 Ill. App. 3d 187, 193.) Thus, the petition was untimely, and the court's order of involuntary commitment is reversed.

Because we reverse based on respondent's first contention of error, we need not address his remaining contentions.

Reversed.

UNVERZAGT and WOODWARD, JJ., concur.