*In re* DAVID STONE, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. David Stone, Respondent-Appellant).

Second District   No. 2—92—0283

Opinion filed September 2, 1993.

862

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Respondent, David Stone, appeals the order of the circuit court finding him to be a person subject to involuntary admission and ordering him hospitalized with the Department of Mental Health and Developmental Disabilities (405 ILCS 5/3—700 (West 1992)). Respondent raises three issues for review: (1) whether the order for involuntary admission must be reversed because the petition was not filed within 24 hours of respondent's admission; (2) whether the failure of the State to make a complete verbatim record at the hearing was reversible error; and (3) whether the State's failure to adhere strictly to the procedures set forth in the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—100 *et seq.* (West 1992)) (Mental Health Code) deprived the trial court of subject matter jurisdiction, thereby rendering the order void. We reverse.

Respondent was admitted to Singer Mental Health Center (Singer) on February 9, 1992, after being transferred from the emergency room at St. Anthony Hospital in Rockford. The State filed a petition for respondent's involuntary admission on February 11, 1992. One of the physician's certificates stated that respondent was examined on February 9 at 7:05 p.m. at St. Anthony Hospital. The other certificate stated that respondent was examined by another doctor on February 10 at 12:15 p.m. at Singer. Both certificates stated that respondent was mentally ill, and, because of the illness, respondent was expected to inflict serious physical harm on himself or another.

Social worker Pamela Pickett testified at the hearing that she was working in the emergency room when respondent came in. He was intoxicated and crying. He told Pickett that he had driven from Idaho and was looking for his girlfriend, who had relatives in the area. Respondent told Pickett that if he could see his girlfriend's father, he would kill him. Respondent showed Pickett a scar on his abdomen and one on his leg. Respondent said he had stabbed and cut himself in November 1991 and that he had been hospitalized as a result. Respondent also told Pickett that he was so devastated by his situation that he might "destroy or mangle himself or stab himself." Respondent indicated that he did not care what happened to himself and that he might go outside and freeze to death because "[t]hat would be better for everybody."

Laura Colcord, a registered nurse who was working in the emergency room when respondent came in, testified that respondent was crying inappropriately and would not answer questions. He smelled strongly of alcohol. Colcord overheard respondent tell a doctor that he wanted to kill himself.

Warren Lewis, a psychiatrist, examined respondent on February 14, 1992. Respondent told Dr. Lewis that he came to Rockford from California by way of Boise, Idaho, to try to see his ex-girlfriend. Respondent had been under great emotional stress. He had no job, no place to stay, no local friends, and limited funds. Respondent became exhausted by the trip, and, after drinking, began having suicidal thoughts. Respondent called a cab to take him to the hospital.

Dr. Lewis' findings were based, in part, on nursing notes from respondent's hospitalization at Singer. The nurse reported in one note that defendant was treated at a hospital in California for injuries to his abdomen and his ankles, and he was released after three days. Dr. Lewis opined that respondent was mentally ill and that, as a result, he was expected to inflict serious harm upon himself or his ex-girlfriend and her family in the near future. Dr. Lewis diagnosed re-

spondent as suffering from bipolar disorder, mixed type, "with depression showing obsessive, compulsive behavior, unresolved feelings of grief and loss."

Respondent testified against his counsel's advice, and in his testimony respondent explained that he came to Rockford to "reach a resolve" in the relationship with his ex-girlfriend, and he had no intention of harming anyone. He did not intend to reestablish the relationship. Respondent had driven 1,700 miles nonstop, a 30-hour trip. Respondent was mentally and physically exhausted by the time he reached Rockford. According to respondent, he resolved the situation, and he and his ex-girlfriend decided to go their separate ways. Respondent indicated that, at the time of the hearing, he was not suicidal. Respondent admitted that he inflicted harm on himself in California, but he denied that it was an attempted suicide.

The testimony from the hearing was recorded on a cassette tape with no court reporter present. During the trial court's explanations of its findings, the tape ended. In a written order, the court ordered respondent involuntarily committed to Singer. Respondent timely appealed.

■ Respondent first contends that the order of involuntary admission must be reversed because the State failed to follow the statutory requirements for filing the petition. Section 3—611 of the Mental Health and Developmental Disabilities Code states, in relevant part:

> "Within 24 hours, excluding Saturdays, Sundays and holidays, after the respondent's admission under this Article, the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court." (405 ILCS 5/3—611 (West 1992).)

Respondent argues that since he was admitted on February 9, a Sunday night, and the petition was not filed until February 11, the petition was untimely.

Since respondent was admitted on a Sunday, under section 3—611, the 24-hour time period began to run at the beginning of Monday, February 10. The State responds that because the 24-hour period ran until the beginning of Tuesday morning, and court is not in session at that time, the State was allowed to file the petition as soon as court opened Tuesday morning. The State cites no authority for its proposed business hours exception to the plain statutory language of "[w]ithin 24 hours, excluding Saturdays, Sundays and holidays." In-

voluntary commitment procedures infringe on a person's liberty interest, and, therefore, these statutory sections must be construed strictly in favor of the respondent. *In re Splett* (1991), 143 Ill. 2d 225, 236.

Moreover, this court recently rejected the State's interpretation. (*In re La Touche* (1993), 247 Ill. App. 3d 615.) In *La Touche*, we determined that section 3—611 allows only one business day in which to comply with the 24-hour requirement. (*La Touche*, 247 Ill. App. 3d at 618.) Under *La Touche*, if a person is admitted on a Saturday, Sunday or holiday, the 24-hour period in which the petition must be filed begins at midnight of the next day that is not a Saturday, Sunday or holiday, and it expires at midnight the following day. (*La Touche*, 247 Ill. App. 3d at 619; see also *In re Elkow* (1988), 167 Ill. App. 3d 187, 193.) The designation of midnight may cause confusion, as the State here asserts that "midnight on Monday night is actually Tuesday morning." For clarification, we believe that the 24-hour period should be said to begin at 12:01 a.m. of the next day that is not a Saturday, Sunday or holiday, and expires at 12:01 a.m. the following day.

■ Timeliness of the petition here required that it be filed before 12:01 a.m. February 11, that is, filed on February 10, which it was not. We therefore agree with respondent that the petition was not filed timely.

The State argues that because respondent failed to object to the late filing, he has waived the issue. The State relies on *In re Nau* (1992), 153 Ill. 2d 406, and *In re Splett* (1991), 143 Ill. 2d 225, where the supreme court determined that the failure to object to the State's failure to comply strictly with the Mental Health Code did not require reversal. The error in *Nau* and *Splett* concerned the notice to the respondents. (*Nau*, 153 Ill. 2d at 416; *Splett*, 143 Ill. 2d at 229.) In both cases, the court found that the error was not reversible because the respondents received actual notice, which satisfied the purpose of the notice requirement. (*Nau*, 153 Ill. 2d at 419; *Splett*, 143 Ill. 2d at 232.) The respondent's failure to object to a procedural defect " ' "that could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway" ' " waives the issue for review. *Nau*, 153 Ill. 2d at 419, quoting *Splett*, 143 Ill. 2d at 231, quoting *In re J.W.* (1981), 87 Ill. 2d 56, 62.

The failure to comply strictly with the notice requirements is different, however, from the failure to file the petition timely. In *Nau* and *Splett*, the respondents received actual notice, thereby satisfying the purpose of the statutory section. Here, the purpose of the statu-

tory section requiring immediate action on an emergency admission has not been satisfied.

In addition, the *La Touche* court found that the *Nau* and *Splett* rationale did not apply to the case before it because neither the respondent nor his counsel indicated that the petition was filed timely. (*La Touche*, 247 Ill. App. 3d at 618.) Here, also, neither respondent nor his counsel admitted or indicated that the petition was filed timely.

The State further argues that under the second part of *Nau*, respondent waived the issue by failing to object. The court in *Nau* concluded that the respondent waived the issue of the timeliness of the petition for continued hospitalization because he failed to object at the hearing. (*Nau*, 153 Ill. 2d at 421.) *La Touche* determined that *Nau* did not apply because the error in failing to file an emergency petition timely was not the type of error which could be cured if objected to promptly. (*La Touche*, 247 Ill. App. 3d at 620.) Furthermore, the late filing of the petition for continued commitment in *Nau* was harmless error because the petition qualified as a timely petition for initial commitment. (*Nau*, 153 Ill. 2d at 423; see also *In re Houlihan* (1992), 231 Ill. App. 3d 677, 682.) The petition here did not qualify as a timely petition under any of the statutory sections. Thus, *Nau* is distinguishable, and, under *La Touche*, respondent's failure to object to the timeliness of the emergency petition did not waive the issue and the error is not harmless.

Because we reverse the court's order of involuntary commitment, we need not address respondent's remaining contentions. We note, however, our concern about the failure of the court to make a complete verbatim record of the proceedings. As respondent points out, many portions of the transcript are incomplete because the testimony was inaudible, and the judge's findings were not set out fully because the tape ended. As we recently stated, "[w]e urge the future use of court reporters during such hearings in order to avoid the consequences of this scenario." *In re Friberg* (1993), 249 Ill. App. 3d 86, 92-93.

The judgment of the circuit court is reversed.

Reversed.

BOWMAN and QUETSCH, JJ., concur.