NO. 4-00-0805

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of SAKIN DEMIR, a Person Found Subject to Involuntary Admission, THE PEOPLE OF THE STATE OF ILLINOIS,

          Petitioner-Appellee,

          v.

SAKIN DEMIR,

          Respondent-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of 

Champaign County

No. 00MH17

 

Honorable

Ann A. Einhorn,

Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

On August 24, 2000, the State filed a petition seeking involuntary admission of Sakin Demir 
to a mental health facility.  After a hearing on August 28, 2000, the trial court ordered Demir to be admitted as an involuntary psychiatric patient to Zeller Mental Health Center for up to 180 days.  Demir appeals, arguing the circuit court erred in denying his motions to dismiss for the State's alleged failure (1) to comply with statutory detention procedures and (2) to file the petition within the appropriate time frame.  We reverse.

I. BACKGROUND 

On August 22, 2000, Demir, a 30-year-old resident of Champaign, Illinois, was allegedly attacked by another man.  According to Demir, the two men traded blows, and Demir then pulled a knife and forced the man to retreat.  Demir viewed his actions as taken in self-defense.  

Police later arrived 
at the scene, apprehended Demir, and took him to the Provena-Covenant Hospital emergency room.  According to hospital records, Demir was admitted to the psychiatric unit of the hospital on August 22, 2000.  The prosecutor at trial stated a petition for involuntary commitment under the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 through 6-107 (West 1998)) was prepared on August 22, 2000, but not filed with the court.  The prosecutor further "recited that since the initial petition could not be filed within the 24-hour period, a second petition was prepared and filed within 24 hours of the completion of the first certificate."  On August 23, 2000, Rob Stewart, a licensed clinical social worker, executed a second petition for involuntary commitment under the Code, asserting (1) respondent was mentally ill and because of that mental illness was reasonably expected to inflict serious physical harm on himself or another in the near future and (2) "the petition recited that within 12 hours of admission, Stewart gave respondent a copy of the petition on August 23, 2000, at 0930."  The first certificate to the second petition was based on an examination of Demir by Dr. Albert Lo held at 10:30 a.m. on August 23, 2000.  The second certificate to the second petition was based on an examination of Demir by Dr. J.A. Gergen held at 9:30 a.m. on August 24, 2000.  On August 24, 2000, at 11:32 a.m., the prosecutor filed the petition and certificates with the court, seeking emergency admission by certificate.  405 ILCS 5/3-600 through 3-611 (West 1998). 

On August 28, 2000, the circuit court conducted a bench trial.  Prior to hearing evidence on the petition, the court heard respondent's motion to dismiss the petition based on a failure to file the petition within 24 hours of respondent's entry to the mental health facility.  The court stated it did not find cause for dismissal.  

The trial court then heard respondent's motion to dismiss for failure to comply with the emergency petition procedures required by the Code.  Demir argued the police officers should have completed the petition upon their appearance at the mental health facility to authorize the detention.  405 ILCS 5/3-606 (West 1998).  The State responded any adult may file a petition to commit under the Code.  405 ILCS 5/3-601 (West 1998).  The court denied the motion.  

The trial court then heard evidence on the petition and found the petition proved.  Demir moved for dismissal based on the State's failure to submit a treatment plan and dispositional report as required by the Code.  405 ILCS 5/3-810 (West 1998).  The State submitted a two-page report entitled "Comprehensive Examination and Social Investigation," four pages of progress notes by Dr. Lo, and two pages of a crisis-screening form.  The court denied the motion and found the documents submitted along with the testimony of Dr. Lo were sufficient.  

The circuit court found respondent to be a person subject to involuntary admission and ordered him hospitalized in the Department of Mental Health and Developmental Disabilities.

Respondent appeals.

II. ANALYSIS

Involuntary commitment proceedings involve a person's liberty interests and, thus, the statutory sections of the Code should be construed strictly in favor of the respondent.  
In re Houlihan
, 231 Ill. App. 3d 677, 681, 596 N.E.2d 189, 192 (1992).  "Inherent in the civil commitment proceeding are the distinct interests of providing patients with necessary treatment as well as protecting society from dangerous conduct."  
In re Williams
, 151 Ill. App. 3d 911, 919, 503 N.E.2d 816, 821 (1987).  As the facts are not in dispute on the issues and the questions are ones of law, 
de
 
novo
 review is appropriate.  
In re Moore
, 301 Ill. App. 3d 759, 764, 704 N.E.2d 442, 445 (1998).  

A. Compliance with Statutory Detention Procedures

Demir first argues the execution of the petition by a staff social worker at the hospital is not in compliance with the Code when the police actually brought him to Provena-Covenant Hospital.  The Code provides as follows:

"A peace officer may take a person into custody and transport him to a mental health facility when, as a result of his personal observation, the peace officer has reasonable grounds to believe that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm ***.  *** Upon arrival at the facility ***, the peace officer shall complete the petition under [s]ection 3-601."  405 ILCS 5/3-606 (West 1998).  

Respondent argues since a police officer did not file the petition as contemplated by the stated provision, the trial court erred by granting the petition.

The State contends as follows:

"When a person is asserted to be subject to involuntary admission and in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm, any person 18 years of age or older may present a petition to the facility director of a mental health facility in the county where the respondent resides or is present ***.  ***  The petition may be prepared by the facility director of the facility."  405 ILCS 5/3-601(a) (West 1998).  

In this case, Rob Stewart, a licensed clinical social worker, executed the petition.  The State argues it thus complied with section 3-601 in the involuntary admission of Demir.

However, Stewart's petition, in part, referenced the police bringing respondent to the hospital after "being in an altercation.  He reportedly pulled a knife on [a] person.  He told [a] crisis worker in [the emergency room] that he carries this knife for self[-]defense and is at risk for political reasons.  He reported the Champaign police is [
sic
] involved with a CIA terrorist group."  The petition names a police officer and a woman as witnesses to these facts.  Stewart does not state he observed any of the behavior upon which the assertion of respondent's dangerousness to himself or others was premised.  

The hospital's records show police officers took Demir into custody and transported him to the hospital after their observation of him.  We can further extrapolate from the record the officers had reasonable grounds to believe Demir was subject to involuntary admission and in need of immediate hospitalization to protect himself or others from physical harm.  The Code allows for this type of detention and transportation.  405 ILCS 5/3-606 (West 1998). 

The Code further provides, however, "[u]pon arrival at the facility ***, the peace officer shall complete the petition under [s]ection 3-601."  405 ILCS 5/3-606 (West 1998).  Here, the officers involved failed to fill out the section 3-601 petition as required.  When an officer detains and transports a person in this manner, 
i.e.
, the officer believes a person is in need of involuntary commitment, the officer must then fill out the petition as required by section 3-606, incorporating section 3-601, of the Code.  The procedural safeguards in place are not mere technicalities to be sidestepped.  Rather, the legislature created them to protect people from the deprivation of a liberty interest.  
In re Luttrell
, 261 Ill. App. 3d 221, 230, 633 N.E.2d 74, 81 (1994).  Thus, we find the trial court committed reversible error by denying Demir's motion to dismiss on this basis.

B. Filing of the Petition Within the Time Frame

Demir next argues the circuit court's order granting the petition
 for involuntary commitment must be reversed because the State failed to file the proper documents within 24 hours of respondent's admission.  405 ILCS 5/3-611 (West 1998). 

Section 3-611 of the Code (405 ILCS 5/3-611 (West 1998)) provides as follows:  

"
Within
 
24
 
hours
, excluding Saturdays, Sundays[,] and holidays, 
after
 
the
 
respondent's
 
admission
 under this [a]rticle, 
the
 facility 
director
 of the facility 
shall
 
file
 
2
 
copies
 
of
 
the
 
petition
, the first certificate, and proof of service of the petition[,] and statement of rights upon the respondent 
with
 
the
 
court
 in the county in which the facility is located."  (Emphasis added.)

If a person is admitted on a Sunday, and the following Monday is not a holiday, the 24-hour period during which the petition must be filed begins at 12:01 a.m. Monday and expires at 12:01 a.m. Tuesday.  See 
In re Stone
, 249 Ill. App. 3d 861, 865, 619 N.E.2d 1345, 1347 (1993).  The failure to timely file the petition is an error that cannot be waived (
In re La Touche
, 247 Ill. App. 3d 615, 618, 617 N.E.2d 844, 846 (1993); 
Stone
, 249 Ill. App. 3d at 866, 619 N.E.2d at 1348) or considered harmless (
La Touche
, 247 Ill. App. 3d at 620, 617 N.E.2d at 848; 
Stone
, 249 Ill. App. 3d at 866, 619 N.E.2d at 1348).  Section 3-611 of the Code creates a bright-line test with which the facility director must strictly comply.  
Sassali v. DeFauw
, 297 Ill. App. 3d 50, 53, 696 N.E.2d 1217, 1219 (1998).

 In this case, on August 22, 2000, the police brought Demir to Provena-Covenant Hospital.  According to hospital staff records, he was admitted to the psychiatric unit at Provena-Covenant Hospital on August 22, 2000, and held on petition and certificate to await his court hearing.  This court finds it troubling that the record is unclear as to the exact time of day Demir was admitted to the hospital or, more important, admitted to the psychiatric unit.  However, even if we answer this question in the light most favorable to the State and hypothesize the hospital admitted Demir to the psychiatric unit at the latest time possible on Tuesday, August 22, the time would be 11:59 p.m.  The only petition filed with the court in this case was signed at "930" on Wednesday, August 23, and filed on August 24, 2000, at 11:32 a.m.  This would be several hours past the 24-hour deadline if commenced on the signing of the second petition.  

Moreover, the prosecutor admitted to the circuit court the original petition filled out for Demir could not be filed because it violated the 24-hour filing rule of section 3-611.  Thus, the staff executed another petition.  This is further evidence Demir was admitted on August 22, 2000.

The State argues it is too difficult to tell when Demir was admitted to the mental health facility in light of 
Moore
.  In 
Moore
, 301 Ill. App. 3d at 765-66, 704 N.E.2d at 446, the patient was "admitted" for purposes of the involuntary admission statute's requirement a patient shall be examined by a psychiatrist and a certificate executed within 24 hours after admission, when he entered the hospital's mental health unit, not when he was admitted to the hospital's emergency room.  However, 
Moore
 is distinguishable from this case.  In this case, even taking the evidence favorably to the State concerning when the hospital actually admitted Demir to the psychiatric unit as compared to merely being at the emergency room, the 24-hour rule is violated. 

The State asserts, alternatively, it substantially complied with the statutory requirements as contemplated by the supreme court in 
In re Robinson
, 151 Ill. 2d 126, 137, 601 N.E.2d 712, 718 (1992).  The court in 
Robinson
, 151 Ill. 2d at 134, 601 N.E.2d at 717, decided, where the admittee in an involuntary admission proceeding fails to object to the absence of a predispositional report, strict compliance with statute requiring such report to be in writing is required only when legislative intent cannot otherwise be achieved.  Under the circumstances there, oral testimony containing information required by statute could be adequately substituted for presentation of a formal, written report prepared by the facility director or some other person authorized by the court.  
Robinson
, 151 Ill. 2d at 134, 601 N.E.2d at 717. 

However, in this case, Demir did object to the State's violation of the 24-hour filing rule, and the State cannot otherwise achieve the legislative intent of the statute.  Moreover, this court in 
Luttrell
, 261 Ill. App. 3d at 229, 633 N.E.2d at 80, stated as follows:  

"Given the important liberty interests of the respondent, we do not believe we ought to make a string of unsupported speculations in order to reach the ultimate assumption the proper procedures were followed.  The deadlines set forth in the Code are not mere technicalities.  They are bright lines created by the legislature to avoid deciding these cases on an 
ad
 
hoc
 basis and to prevent abuse of the procedures involved."

The State failed to file the petition and paperwork within 24 hours of Demir's admission to the psychiatric unit of the hospital.  Thus, the trial court committed an independently reversible error in denying Demir's motion on this point.  

III. CONCLUSION

The Code provides a comprehensive set of requirements to be followed by the State to commit an individual involuntarily by certificate.  They are intended to safeguard the important liberty interests necessarily involved in mental health cases.  
Luttrell
, 261 Ill. App. 3d at 230, 633 N.E.2d at 81.  When such important interests are at stake, the safer practice in the future would be to fully comply with such requirements rather than attempt to minimally comply. 

Accordingly, we reverse the trial court's judgment.

Reversed.

STEIGMANN
, P.J., and McCULLOUGH, J., concur.