*In re* TYRONE JAMES, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Tyrone James, Respondent-Appellant).

Fourth District   No. 4—89—0825

Opinion filed June 27, 1990.

Michael H. Vonnahmen, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent appeals a circuit court order which found he was mentally ill, and because of his illness, likely to inflict serious physical harm upon another (Ill. Rev. Stat. 1987, ch. 91½, par. 1—119(1)), and

ordered his admission to a mental health facility. Respondent argues (1) the circuit court erred in failing to consider a report before disposition as required by section 3—810 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—810); and (2) the evidence was not clear and convincing.

We affirm.

Callie James, respondent's mother, filed a petition asserting respondent was mentally ill and, because of his illness, reasonably expected to inflict serious harm on himself or another. The petition alleged respondent was in need of immediate hospitalization. Ill. Rev. Stat. 1987, ch. 91½, pars. 3—600, 3—601.

Dr. Terry Killian, a psychiatrist, filed a certificate supporting the petition. Killian certified respondent was mentally ill and reasonably likely to inflict harm on himself or others. Killian noted respondent had a history of chronic mental illness. However, the condition responded well to medication. Currently, respondent was not taking his medication. Killian based his diagnosis upon respondent's beliefs that his mother was stealing his mail, people were telling him to kill her, and his mother should be killed.

John Lauer, a psychiatry resident, also certified respondent was mentally ill and likely to inflict harm upon another. Lauer based his diagnosis in part upon respondent's history of chronic paranoid schizophrenia. Lauer stated respondent had stopped taking his medication two months prior to admission. Respondent believed his mother was poisoning him, heard voices telling him about the poison, and thought about killing his mother. Lauer noted respondent's history included assaulting his mother and threatening her with a shotgun. A third certificate was filed on October 11, 1989.

Karen Broquet, a staff psychiatrist at Andrew McFarland Mental Health Center, testified she examined respondent and was familiar with his mental health history. Respondent believed his mother was putting something in his food, interfering with his receiving the word of God, and needed to be dead. Respondent suffered from chronic paranoid schizophrenia, which responded well to medication. However, respondent had been refusing to take his medication and was delusional. Respondent was aggressive, had been involved in a violent episode at the hospital, and posed a significant risk of harm to others.

Broquet testified respondent's treatment plan addressed a variety of issues. It was directed toward encouraging him to take his medication and contained support programs to emphasize the distinction between reality and delusions. Respondent was also involved in social programs, central programming activities, and the unit environment.

Broquet stated hospitalization was the least restrictive treatment setting.

Respondent stated that Jews had paid the sheriff to bring him to the mental health facility. He believed he could care for himself if "the woman" did not slip something into his food. Respondent would not name "the woman," but stated she was a witch, who had been casting spells. President Bush had said to free him.

The trial judge found respondent had a mental illness and was reasonably likely to inflict harm upon himself or others because of the illness. The judge based his finding on the expert testimony, respondent's testimony, the medical history, and the events of physical aggression. The judge stated he considered testimony concerning the treatment plan and found admission to a mental health facility was the least restrictive environment.

Initially, respondent argues the court erred in ordering his involuntary admission absent consideration of a treatment report as required by section 3—810 of the Code. Section 3—810 of the Code states:

> "Before disposition is determined, the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. *** If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." (Ill. Rev. Stat. 1987, ch. 91½, par. 3—810.)

Recently, this court held a total failure to comply with section 3—810 of the Code constituted reversible error. (*In re James* (1989), 191 Ill. App. 3d 352, 547 N.E.2d 759; see generally *In re Collins* (1981), 102 Ill. App. 3d 138, 429 N.E.2d 531.) In *James* we stated:

> "Involuntary commitment procedures represent the balance between an individual's liberty interests and society's dual interests in protecting itself from potentially dangerous individuals while protecting and caring for those who are unable to care for themselves. (*Stephenson*, 67 Ill. 2d 544, 367 N.E.2d 1273.) Thus, the procedures set forth in the Code are a legislative recognition that civil commitment is a deprivation of personal liberty. The purpose of the procedures is to provide adequate safeguards against unreasonable commitment. [Citation.] Inherent in the civil commitment process is the State's promise that the individual subject to admission will receive treatment.

[Citations.] We agree with the *Collins* court's conclusion that a total failure to comply with the section evidences a disregard for the legislatively established procedures. It is contrary to the balancing of interests established by the Code and should not be condoned." *James*, 191 Ill. App. 3d at 356, 547 N.E.2d at 761-62.

■ In the instant case, a report before disposition was prepared, and Broquet testified about it. The trial judge specifically stated he relied upon the report as testified to by Broquet. We find the trial court complied with section 3—810 of the Code. The specific language of the statute does not require the filing of the report prior to the hearing. It requires preparation of a report containing specific information and consideration of the report by the trial court. We note the record establishes a report complying with section 3—810 of the Code was prepared on October 4, 1989. It was filed on November 9, 1989.

The situation in the instant case is analogous to that presented in *In re Meek* (1985), 131 Ill. App. 3d 742, 476 N.E.2d 65. In *Meek*, respondent argued the report filed pursuant to section 3—810 of the Code lacked sufficient detail. On appeal, the court found respondent waived any objection to the sufficiency of the report by failing to raise it below. Since the statute was complied with, no error occurred in this case. Additionally, respondent has waived any objection to the sufficiency of the report. See also *In re Smoots* (1989), 189 Ill. App. 3d 289, 544 N.E.2d 1235.

■ ■ Respondent next argues the evidence was insufficient to support a finding of mental illness and danger to others. In order to adjudicate a person in need of mental treatment, the court must be presented with clear and convincing evidence which establishes (1) the respondent is suffering from a mental disorder; and (2) due to the disorder, the respondent may injure himself or others, or is unable to care for himself. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273; *James*, 191 Ill. App. 3d 352, 547 N.E.2d 759.) Courts do not have to wait until someone is actually harmed before ordering hospitalization. (*In re Grimes* (1990), 193 Ill. App. 3d 119, 549 N.E.2d 616.) The evidence supports the court's decision. Respondent suffered from paranoid schizophrenia, was delusional, was actively aggressive, and had threatened his mother.

For the above reasons, we affirm the trial court.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.