*In re* LOUIS S., a Person Found Subject to Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Louis S., Respondent-Appellant).

Fourth District   No. 4—05—0131

Opinion filed October 31, 2005.

MYERSCOUGH, J., specially concurring in part and dissenting in part.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, and

Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In January 2005, a petition was filed for the administration of involuntary treatment as to respondent, Louis S., alleging he had a mental illness and lacked the capacity to give informed consent. The trial court conducted a hearing and granted the petition.

On appeal, respondent argues (1) his procedural due-process rights were violated and (2) the State failed to set forth clear and convincing evidence warranting authorized involuntary treatment. We reverse.

## I. BACKGROUND

On January 21, 2005, respondent was involuntarily committed for 90 days. Respondent has appealed from that order in case No. 4—05—0085. On January 25, 2005, Dr. William Earley of the McFarland Mental Health Center filed a petition for administration of involuntary treatment as to respondent. The petition alleged respondent lacked the capacity to give informed consent, and it sought authorization to administer various psychotropic medications. On January 26, 2005, counsel was appointed to represent respondent and notice of the January 28 hearing was sent.

On January 28, 2005, the trial court conducted a hearing on the petition. Dr. Zhihong Zhang testified as an expert in psychiatry. Dr. Zhang stated he was part of respondent's treatment team for his bipolar disorder. Respondent showed symptoms of paranoia, "was very aggressive," and "tried to threaten his wife with a knife." Dr. Zhang had prescribed Zyprexa to reduce respondent's paranoia, delusions, and aggressive behavior. Dr. Zhang stated respondent had exhibited aggressive behavior by being "very loud and intrusive" and the medication would decrease his paranoia and delusions and help organize his thought processes. If the medication was not given, Dr. Zhang stated, respondent's situation would get worse. Dr. Zhang opined the potential benefits from the medication outweighed the potential side effects such as weight gain and a sedating effect.

Dr. Zhang testified he discussed the medication with respondent, but respondent refused to take the written statement of the possible side effects. Respondent did not seem to "understand what the medication would do to affect him" and stated he did not need the medication. Dr. Zhang opined a less-restrictive service was not available and recovery would not happen without medication.

Respondent then cross-examined Dr. Zhang. Respondent questioned him about clinical notes finding him paranoid. After respondent's counsel stated she needed to ask the questions, respondent stated his intention to represent himself with help from counsel on "procedural matters." The following exchange occurred:

"THE COURT: Well, [Mr. S.], do you have training in how to conduct yourself in a hearing, or do you *** just want to argue with the doctor?

THE RESPONDENT: No, I'm not arguing; I'm asking questions.

THE COURT: So far you're not doing too bad.

THE RESPONDENT: Well, I'm just trying to—

THE COURT: —you have appointed counsel to assist you, [Mr. S.].

THE RESPONDENT: She hasn't been helping me. I've requested her help. I've tried to contact her on the phone, and she will not talk to me. Either I need another public counsel or I need to handle this myself.

THE COURT: Do you have training to handle cases in court, [Mr. S.]?

THE RESPONDENT: I've never been admitted to the bar.

THE COURT: You may continue [Mr. S.]. I mean, you have counsel at your side to assist you."

Respondent then asked Dr. Zhang if it was possible to bring the nurses who wrote the notes into court and question them. The court denied the request.

When respondent asked how he manifested his aggression, Dr. Zhang stated respondent had threatened his wife with a knife. Further, respondent was intrusive and spoke "very loud." Respondent claimed he had not been convicted of harming his wife, but the trial court stated the evidence in a prior hearing was sufficient to require his admittance to the hospital. When asked why he had not been able to appeal that issue, the court stated it was currently on appeal. After the court told respondent about the appeal process, the following exchange occurred:

"THE RESPONDENT: I guess so I've been loud and intrusive while I've been out here, is that the bottom line?

DR. ZHANG: No, is not bottom line. Bottom line, you are still paranoia [sic] and you threatened your wife with a knife and would be dangerous to other people.

Q. But, I still don't understand how we know for a fact that I threatened my wife with a knife.

How do we know that for a fact?

THE COURT: Because she told us that and I believed her.

THE RESPONDENT: So, that's a fact. That's hearsay.

THE COURT: No, it wasn't hearsay. She sat right there and told me that last week, [Mr. S.]. You're done, [Mr. S.].

I'm not going to argue with you all day today about what happened or didn't happen. I heard evidence about what happened.

The issue today \*\*\* the doctor [is] of the opinion that you need to take medication to improve your situation, that this is chronic, it's gone on for many years, that you will not take the medication, and they're asking [for] an order from me for you to take the medication and that is the [o]rder."

The court allowed the State's petition. This appeal followed.

## II. ANALYSIS

### A. Mootness

■ Initially, we note this case is moot. Section 2—107.1(a—5)(5) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1(a—5)(5) (West 2004)) provides that an order for the administration of authorized involuntary treatment shall in no event be effective for more than 90 days. Here, the trial court's order granting the petition for involuntary treatment was entered on January 28, 2005. Since the 90 days have passed and the court's order no longer has any force or effect, it is impossible for this court to grant any effectual relief to any party. Thus, any decision rendered would merely be advisory, and "[g]enerally, a court of review will not consider moot or abstract questions or render advisory decisions." *In re Robert S.*, 213 Ill. 2d 30, 45, 820 N.E.2d 424, 433 (2004). Moot issues may be reviewed, however, under the public-interest exception to the mootness doctrine. *Robert S.*, 213 Ill. 2d at 45, 820 N.E.2d at 433.

> "The criteria for application of the public[-]interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur." *Robert S.*, 213 Ill. 2d at 45, 820 N.E.2d at 433-34.

Our supreme court has stated the authorization of involuntary medication of mental-health patients is a matter of " 'substantial public concern.' " *Robert S.*, 213 Ill. 2d at 46, 820 N.E.2d at 434, quoting *In re Mary Ann P.*, 202 Ill. 2d 393, 402, 781 N.E.2d 237, 243 (2002). Also, the short duration of an order authorizing involuntary treatment renders it likely that similar litigation would again be mooted by the expiration of the order. *Robert S.*, 213 Ill. 2d at 46, 820 N.E.2d at 434. Thus, we find review appropriate.

### B. Statutory Compliance

Respondent argues he did not receive at least three days' notice prior to a hearing on the petition for authorized involuntary treatment as required by the Code. We agree.

■ Section 2—107.1(a—5)(1) of the Code (405 ILCS 5/2—107.1(a—5)(1) (West 2004)) provides, in part, as follows:

"The petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent, his or her attorney, any known agent or attorney-in-fact, if any, and the guardian, if any, no later than 3 days prior to the date of the hearing."

This court has stated " '[t]he procedural safeguards enacted by the legislature are not mere technicalities. Rather, they are intended to safeguard the important liberty interests of the respondent which are involved in mental[-]health cases.' " *In re O.C.*, 338 Ill. App. 3d 292, 298, 788 N.E.2d 1163, 1168 (2003), quoting *In re Luttrell*, 261 Ill. App. 3d 221, 230, 633 N.E.2d 74, 81 (1994).

In the case *sub judice*, the petition was filed on January 25, 2005. A copy of the petition for forced medications was given to respondent on the same date. The copy of the petition did not notify respondent of the date of the hearing because a hearing had not been set by the court. The order setting the hearing on the petition for January 28, 2005, was filed January 26, 2005, and mailed to respondent. Thus, respondent did not receive three days' notice prior to the hearing as required by the Code.

In *In re C.E.*, 161 Ill. 2d 200, 226-27, 641 N.E.2d 345, 357 (1994), our supreme court held formal notice under a section 2—107.1 petition is not necessary if the respondent and his attorney were aware of the proceedings and given ample opportunity to respond to the arguments made. Instead, the respondent must establish he was prejudiced by the absence of formal notice. *C.E.*, 161 Ill. 2d at 227, 641 N.E.2d at 357.

■ In this case, we question whether two days' notice sufficiently afforded respondent's counsel time to prepare. Although "[s]hort notice alone is insufficient to constitute prejudice *per se*" (*In re Jones*, 285 Ill. App. 3d 8, 12, 673 N.E.2d 703, 705 (1996)), we find respondent was prejudiced by the lack of timely notice. During the hearing, respondent began cross-examining Dr. Zhang. On two occasions, the assistant public defender told respondent she was supposed to be the one asking questions. Respondent then stated he tried to contact counsel but she would not return his calls. Counsel then asked whether respondent wanted to represent himself, and respondent answered in the affirmative and asked that counsel be available for "procedural matters." Respondent claimed his appointed counsel had not been helping him and would not talk to him when he tried to contact her by phone. It is unclear whether respondent had an opportunity to consult with his attorney prior to the hearing to prepare his defense. Further, the trial court denied respondent's request to produce nurses as wit-

nesses, thereby indicating his difficulty in presenting his defense. Accordingly, we hold respondent was not provided with sufficient notice as required by the Code.

## C. Sufficiency of the Evidence

■ Respondent argues the State failed to present clear and convincing evidence warranting authorized involuntary treatment. We agree.

When reviewing the sufficiency of the evidence in a case involving the involuntary administration of psychotropic medication, a court of review will not overturn the trial court's ruling unless it is against the manifest weight of the evidence. *In re Richard C.*, 329 Ill. App. 3d 1090, 1094, 769 N.E.2d 1071, 1075 (2002). A judgment will be considered against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence." *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

The Code provides authorized involuntary treatment shall not be administered unless the State proves the following by clear and convincing evidence:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less[-]restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2—107.1(a—5)(4)(A) through (a—5)(4)(G) (West 2004).

The trial court must find evidence of each of the elements to authorize the forced administration of psychotropic medication. *Jones*, 285 Ill. App. 3d at 12, 673 N.E.2d at 706.

Respondent argues the State failed to prove he lacked the capacity

to make a reasoned decision about the requested treatment. See 405 ILCS 5/2—107.1(a—5)(4)(E) (West 2004). Section 2—102(a—5) of the Code requires the treating physician to "advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2—102(a—5) (West 2004).

Before a patient can make a reasoned decision about medication, "it is first necessary to be informed about the risks and benefits of the proposed course of medicine." *John R.*, 339 Ill. App. 3d at 783, 792 N.E.2d at 354.

> "Even where the physician has verbally advised the patient of the benefits and side effects of the medication and the patient has informed the physician that he chooses not to take the medication, the patient is still entitled to receive the written notification required by section 2—102 of the Code (405 ILCS 5/2—102 (West 2000)). [Citation.] Verbal notification is not enough to ensure a respondent's due[-]process rights. [Citation.]" *John R.*, 339 Ill. App. 3d at 783, 792 N.E.2d at 355.

In this case, while testifying to the benefits and possible side effects of Zyprexa, Dr. Zhang stated he had an opportunity to discuss the medication with respondent. Dr. Zhang indicated respondent refused to take a written statement of the possible side effects and did not feel he needed the medication. Dr. Zhang did not state he discussed the remaining three medications proposed to be administered to respondent or attempted to give him a written statement of their benefits or possible side effects. Although Dr. Earley's petition stated he advised respondent, in writing, of the risks and benefits of the proposed treatment, the trial court did not make such a finding and heard no such evidence from Dr. Zhang. As the State failed to present evidence that respondent was informed of the risks and benefits of the proposed medication, the trial court's order must be reversed. See *John R.*, 339 Ill. App. 3d at 783, 792 N.E.2d at 355.

We also note the right to written notification is not subject to a harmless-error analysis. *John R.*, 339 Ill. App. 3d at 783, 792 N.E.2d at 355; *Richard C.*, 329 Ill. App. 3d at 1095, 769 N.E.2d at 1075. Strict compliance with the procedural safeguards is required because of the liberty interests involved. *John R.*, 339 Ill. App. 3d at 783-84, 792 N.E.2d at 355. Refusing to discuss treatment with a physician does not waive a patient's right to receive the written advisories required by the Code. *John R.*, 339 Ill. App. 3d at 784, 792 N.E.2d at 355. Further, considering respondent's statement that he did not need the medication, written notice takes on greater importance because "[i]t

would have provided respondent with the opportunity to review the information at a time and in a manner of his choosing." *Richard C.*, 329 Ill. App. 3d at 1095, 769 N.E.2d at 1076. Without evidence respondent received the required written notification, the trial court erred by ordering him to be subjected to the involuntary administration of medication.

The State must also prove by clear and convincing evidence that the benefits of the treatment outweigh the harm. 405 ILCS 5/2—107.1(a—5)(4)(D) (West 2004). "The type of medication to be used is a necessary component of this element." *In re Len P.*, 302 Ill. App. 3d 281, 286, 706 N.E.2d 104, 109 (1999). Courts have "generally required some evidence of the medications to be used." *Len P.*, 302 Ill. App. 3d at 285, 706 N.E.2d at 108; see also 405 ILCS 5/2—107.1(a—5)(6) (West 2004). If a patient is not informed of the risks and benefits of the proposed medication, the trial court's order for the involuntary administration of that medication must be reversed. *In re Edward S.*, 298 Ill. App. 3d 162, 166, 698 N.E.2d 186, 188 (1998).

In this case, Dr. Earley's petition listed Geodon and its dosage range as the first choice of psychotropic medication to be given to respondent. The petition also listed Zyprexa, Haldol, and Proloxin, along with the recommended dosage ranges, as alternatives. At the hearing on the petition, Dr. Zhang testified he was prescribing 20 milligrams of Zyprexa per day. He stated Zyprexa would reduce respondent's paranoia, delusions, and aggressive behavior. He also indicated Zyprexa could cause possible side effects such as weight gain and sedation. He stated the potential benefits of the medication outweighed the potential harm. Dr. Zhang testified to neither the benefits or possible side effects of Geodon, Haldol, or Proloxin, nor to the dosages that would be used. Dr. Zhang never even mentioned these drugs. Yet, the trial court's order lists Geodon and its dosage range as the first choice to be given to respondent, followed by the alternatives of Zyprexa, Haldol, and Proloxin and their dosage ranges.

The State's reliance on *Mary Ann P.* is misplaced. In that case, the respondent's treating psychiatrist testified to the six medications listed in the petition to authorize the involuntary administration of medication. *Mary Ann P.*, 202 Ill. 2d at 396-98, 781 N.E.2d at 240-41. The question in that case was whether the jury could "selectively authorize" the involuntary administration of only those medications it deemed appropriate. *Mary Ann P.*, 202 Ill. 2d at 395, 781 N.E.2d at 239. The supreme court found the Code did not permit the fact finder "to parse the recommended treatment and selectively authorize only certain requested medications." *Mary Ann P.*, 202 Ill. 2d at 407, 781 N.E.2d at 246.

The case before us does not present an issue of selective authorization of certain medications. In *Mary Ann P.*, the State presented physician testimony regarding six medications and dosage ranges sought to be administered (*Mary Ann P.*, 202 Ill. 2d at 396-98, 781 N.E.2d at 240-41), and the trial court's order listed those six medications (*Mary Ann P.*, 202 Ill. 2d at 400, 781 N.E.2d at 242). In contrast, the court here heard testimony from Dr. Zhang on one medication and then included three more in its order that were not testified to at the hearing. The State is correct that the court could not selectively authorize the administration of Zyprexa, but it also could not authorize the administration of extra psychotropic medications not presented at the hearing on the petition.

Based on Dr. Zhang's testimony, the State failed to prove by clear and convincing evidence that the benefits of the treatment outweighed the harm. See *In re Kness*, 277 Ill. App. 3d 711, 720, 661 N.E.2d 394, 399 (1996) (without evidence as to which medication the physician proposed to administer, "there is no way to determine whether the benefits of such medication outweigh the harm in administering it to the respondent"). Here, Dr. Zhang's singular testimony on the risks and benefits of Zyprexa did not then authorize the trial court to order other drugs without similar testimony. Thus, the court's order must be reversed.

Because of our resolution of the preceding issues, we need not consider respondent's allegations of error regarding self-representation and the right to present a defense. Instead, we second the thoughts articulated by the Fifth District in *John R.* to the participants in proceedings under the Code:

> "These proceedings should not be conducted *pro forma*. Fundamental liberty interests are involved in proceedings under the Code. [Citation.] The Code's procedural safeguards are not mere technicalities but essential tools to safeguard these liberty interests. [Citation.] Accordingly, those procedural safeguards are construed strictly in favor of the respondent and must be strictly complied with. [Citation.] The petitioner bears a substantial burden of proof that the trial judge should force the petitioner to meet with real, clear, and convincing evidence before the court enters an order infringing on the respondent's important liberty interests. We believe that every party involved in these proceedings has the best interests of the patient/respondents in mind. Nevertheless, the system can be, and has been, abused, and mistakes have no doubt been made. Accordingly, we remind the parties involved in these proceedings to be ever vigilant to protect the rights of the respondents as reflected in the Code." *John R.*, 339 Ill. App. 3d at 785, 792 N.E.2d at 356-57.

It may have been abundantly clear to those involved that respondent needed professional assistance and the administration of psychotropic medication. However, it remains imperative to conduct the proceedings pursuant to the requirements of the Code. The trial court and counsel involved in these proceedings would be well-advised to peruse the large number of cases dealing with the administration of involuntary treatment with the goal of affording the respondents with the rights they deserve and to which they are entitled. Continued adherence to the stated principles of the Code will not only foster confidence in our judicial system but will also ensure those who need help will receive it.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

STEIGMANN, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I concur in all but the majority's finding that lack of timely notice requires reversal. First, the petition was filed and respondent received the petition on January 25, 2005. The order was entered January 26, 2005, setting the hearing for January 28, 2005, because Sangamon County sets all of the mental-health hearings on Friday (absent a holiday). The statute mandates a hearing on a petition for involuntary medications within seven days of the filing of the petition. 405 ILCS 5/2—107.1(a—5)(2) (West 2004). In this case, not excluding weekends or holidays from the calculation, the hearing had to be held Friday, January 28, 2005. The next mental-health call fell on Friday, February 4, 2005. If holidays and weekends are excluded from the calculation, the hearing would have had to be held on Thursday, February 3, 2005. However, of note, the Code in 19 locations explains holidays and weekends are not to be included in the computation of time. The seven-day hearing and three-day notice requirements for involuntary medication do not include that language. 405 ILCS 5/2—107.1 (West 2004). The legislature has clearly defined the method of counting elsewhere in this Code. Presumptively, then, the three- and seven-day requirements here do not include holidays and weekends, which means the hearing had to be held Tuesday, February 1, 2005, using the rule set forth in the Statute on Statutes (5 ILCS 70/1.11 (West 2004)).

"The Illinois Supreme Court has followed the general rule in counting days in a statutory provision for notice that Sundays and holidays intervening between the day of posting and the date stated for the commencement of proceedings should be counted. [Citations.] Sundays and holidays will be excluded from the statutory computation only when the final day for the doing of an action falls on such days. [Citations.] If the legislature had intended to provide 10 working days within which to file complaints before the Board of Appeals or had intended to exclude weekends or holidays in light of the specific provisions of section 1.11, it would have specifically so provided." *In re Application of the County Treasurer & ex officio County Collector*, 26 Ill. App. 3d 753, 764-65, 326 N.E.2d 120, 128 (1975).

To comply with this seven-day deadline, the court had to violate the three-day notice requirement. Otherwise, the court would be forced to conduct near daily hearings rather than Friday hearings at the three mental-health facilities in Sangamon County, to comply with the three-day notice and seven-day hearing requirements. This ruling will force the court to conduct the hearings at the courthouse—to the detriment of patients and cost to the facilities.

The majority recognizes short notice alone is insufficient to constitute prejudice *per se*. Moreover, the three-day service does not have to be met if the respondent is aware of the proceedings and given ample opportunity to respond to the arguments made. *In re C.E.*, 161 Ill. 2d 200, 226-27, 641 N.E.2d 345, 357 (1994). Respondent was not prejudiced by the short notice. Counsel was well aware hearings were held on Fridays as demonstrated by the record. So was respondent. Further, a short preparation time is contemplated by statute. Additionally, counsel did not request a continuance to prepare.

The majority apparently holds respondent received insufficient notice and was prejudiced because (1) respondent had not spoken to his attorney by telephone, (2) the record does not reflect respondent had an opportunity to consult with his attorney prior to the hearing, and (3) the trial court denied respondent's request to produce nurses as witnesses.

The trial court actually showed great patience with respondent. While respondent certainly ranted about counsel at the hearing, these rants were observed by the court and respondent's own counsel. Respondent's complaints about counsel were heard by the court, and respondent was allowed to participate in his own defense.

Respondent was involuntarily committed because he suffered from hallucinations and a mental illness. We should not reverse on the lack of notice as the trial court was the trier of fact who weighed

respondent's credibility on the quality of his representation and the need for additional witnesses. This court gives great deference to the trial court's findings because the trial court had the opportunity to see the witnesses, hear their testimony, determine their credibility, and weigh the evidence. *In re Carmody*, 274 Ill. App. 3d 46, 50, 653 N.E.2d 977, 981 (1995). The trial court did not abuse its discretion here, and respondent has not shown how he was prejudiced by the trial court's actions. Respondent does not even allege what additional evidence he would have presented or to what the nurses would have testified.

Moreover, the absence of evidence in the record that respondent was unable to consult with his attorney prior to the hearing is due to the fault of respondent and to be disregarded, as it is the appellant's job to supply us with a complete record. When the record on appeal is inadequate, "the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319, 789 N.E.2d 1248, 1252 (2003). It is not the appellate court's obligation to hypothesize a deprivation of rights based upon an absence of evidence in the record.

For these reasons, I would find respondent had sufficient notice of the hearing.